**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X

| | | |
|---|---|---|
| **GLORY WEALTH SHIPPING SERVICES LTD.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **08 Civ. 1102(VM)** |
| **- against -** | : | |
| | : | |
| **FIVE OCEAN CORPORATION LTD.,** | : | |
| | : | |
| **Defendant.** | : | |

----------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF ORDER SEEKING COUNTERSECURITY, VACATION OR REDUCTION IN SECURITY SOUGHT BY PLAINTIFF AND/OR DISCOVERY RESPECTING SAME AND <u>ORDER BARRING FURTHER ATTACHMENTS BY PLAINTIFF</u>**

**NOURSE & BOWLES, LLP**
**Attorneys for Defendant**
**FIVE OCEAN CORPORATION LTD.**
**One Exchange Plaza**
**At 55 Broadway**
**New York, NY 10006-3030**
**(212) 952-6200**

## TABLE OF CONTENTS

Table of Authorities .......... ii

Introductory Statement .......... 1

Summary of Facts .......... 2

The Charter .......... 2

The Refused Voyage .......... 2

Plaintiff's Exaggerated Damages .......... 3

Defendant's Counterclaim .......... 3

Plaintiff's Attachments of Defendant's Property .......... 4

POINT I
PLAINTIFF SHOULD BE ORDERED TO POST COUNTERSECURITY FORTHWITH TO DEFENDANT ON ACCOUNT OF ITS COUNTERCLAIMS .......... 4

POINT II
PLAINTIFF'S CLAIMS AGAINST DEFENDANT ARE GREATLY EXAGGERATED AND SHOULD BE VACATED OR REDUCED AND/OR
PLAINTIFF SHOULD BE ORDERED TO PROVIDE DISCOVERY RESPECTING ITS FIXING OF THE VESSEL .......... 5

Plaintiff Has Failed to Account for Defendant's Payments of $1,840,900.94 and Bunkers Supplied .......... 6

Plaintiff's Claims "Double Dip" for January .......... 6

Plaintiff Has Claimed an Artificially Low Market Value and Excessive Daily Damages .......... 7

Plaintiff's Damages, When Properly Calculated .......... 8

Discovery of Plaintiff's Alleged Damages .......... 9

POINT III
BECAUSE DEFENDANTS HAVE FILED A GENERAL APPEARANCE AND ANSWER, PLAINTIFF SHOULD BE BARRED FROM SERVING FUTURE ATTACHMENTS .......... 9

Conclusion .......... 15

## TABLE OF AUTHORITIES

*Cases*

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445, n. 5 (2d Cir. 2006)* ....... 9

*Chiquita Int'l Ltd. v. M.V. BOSSE, 2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. 2007)*...................... 5

*Chumet Shipping Co., Inc. v. S.S. Pitrea Sea, 1978 A.M.C. 2579, 2580 (S.D.NY. 1978)*............ 11

*Cocotos S.S. of Panama, Societa Anonima v. Sociedad Maritime Victoria, 1957 A.M.C. 397, 399 (S.D.N.Y. 1956)* ........ 11

*Construction Express Enterprises v. Nikki Maritime, Ltd., 558 F. Supp. 1372 (S.D.N.Y. 1983)* . 13

*Fernandes v. United Fruit Co., 303 F. Supp. 681, 683 (D.C. Md. 1969)*.................................. 11

*Finecom Shipping Ltd. v. MultiTrade Enterprises AG, 2005 A.M.C. 2952 (S.D.N.Y. 2005)* ......... 5

*HBC Hamburg Bulk Carriers GmbH & Co. k.g. v. Proteinas y Oleicos S.A. de C.V., 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y.)* ........ 13

*HCB Hamburg is Ythan Ltd. v. Ams. Bulk Transp. Ltd., 336 F. Supp.2d 305 (S.D.N.Y. 2004)* ... 14

*In the Matter of Diakan Love, S.A. and Al-Haddad Bros. Enterprises, Inc., 584 F. Supp. 782, 786 (S.D.N.Y. 1984)* ........ 10

*J.D. & A.B. Spreckely Co. v. The Takoka Maru, 44 F. Supp. 939, 940 (S.D.N.Y. 1942)* ............ 11

*Maryland Shipbuilding & Drydock Co., 201 F. Supp. 858, 860 (S.D.N.Y. 1962)*....................... 11

*Nehring v. Steam M/V Point Vail, 901 F.2d 1044, 1052* ........ 12

*Parkroad Corp. v. China Worldwide Shipping Co. Ltd., 2005 U.S. Dist. LEXIS 11122 (S.D.N.Y.)* ........ 13

*Pioneer Trading (Asia Pacific) Ltd. v. Seyang Shipping Co., Ltd., 04 Civ. 5655 (DAB)* ............ 11

*Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil, 2006 U.S. Dist. LEXIS 60771, 2006 A.M.C. 2120 (S.D.N.Y. 2006)*........ 5, 14

*Western Bulk Carriers (Australia), Pty. V. P.S. International, Ltd., 762 F. Supp. 1302 (S.D. Ohio 1991)* ........ 10

*Yacht Basin, Inc. v. M/V GRAY MIST II, 1990 A.M.C. 2674 (S.D. Fla. 1989)* ............................. 5

*Statutes*

*Supplemental Rule E(4)(f)* ........................................ *1*
*Supplemental Rule E(6)* ........................................ *1, 5*
*Supplemental Rule E(7)* ........................................ *4*
*Supplemental Rule E(7) of the Federal Rules of Civil Procedure* ........................................ *1, 4*

NOURSE & BOWLES, LLP
Attorneys for Defendant
FIVE OCEAN CORPORATION LTD.
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

GLORY WEALTH SHIPPING SERVICES LTD., :

Plaintiff, :

- against - : 08 Civ. 1102(VM)

FIVE OCEAN CORPORATION LTD., :

Defendant. :

-----------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF ORDER SEEKING COUNTERSECURITY, VACATION OR REDUCTION IN SECURITY SOUGHT BY PLAINTIFF AND/OR DISCOVERY RESPECTING SAME AND ORDER BARRING FURTHER ATTACHMENTS BY PLAINTIFF**

## Introductory Statement

Defendant, Five Ocean Corporation Ltd. ("Defendant"), in the alternative, seeks (1) an order pursuant to Supplemental Rule E(7) of the Federal Rules of Civil Procedure ("FRCP") that Plaintiff, Glory Wealth Shipping Services Ltd. ("Plaintiff"), forthwith post cash security to secure Defendant's counterclaims failing which its attachments against Defendant be vacated and its suit dismissed; (2) an order pursuant to Supplemental Rule E(6) vacating or reducing the amount of Plaintiff's Order of Attachment against Defendant and/or discovery regarding the actual refixing of Plaintiff's vessel; and (3) an order pursuant to Supplemental Rule E(4)(f) that

Plaintiff be barred from serving any further attachments on Defendant following Defendant's General Appearance.

**Summary of Facts**

**The Charter**

The underlying claim in this matter arises under a charter party ("Charter Party") between Plaintiff, as owner of the vessel M/T TE HO (the "Vessel") and Defendant, as charterer at a rate of $82,000 per day payable every 15 days in advance (see Exhibit "1"(C) of Paré Affidavit). Defendant subchartered the Vessel ("Subcharter Party") to a third party, Brave Bulk Transport Ltd. ("Brave Bulk") at a rate of $85,000 per day which would have yielded Defendant a net profit of $3,000 per day for the relevant period of approximately 90 days (see Paré Affidavit at ¶ 1 and Exhibit "1"(E) thereto). Both the Charter Party and the Subcharter Party are subject to arbitration in London and English law.

**The Refused Voyage**

Defendant paid Plaintiff an initial hire payment of $1,840,900.94 which included $1,230,000 for 15 days hire from January 11 at 10:33 to January 26 at 10:33 and bunkers on board the Vessel at delivery having a value of $664,097 ($595,145 IFO + 68,952 MDO). See Exhibit "1" (A), (B) and (G) to Paré Affidavit). On that same day, January 11, 2008, Defendant advised Plaintiff's Captain that the voyage would be via the U.S. Gulf to Iraq. See Paré Exhibit "1"(F). Plaintiff, however, refused to allow the Vessel to proceed to Iraq. See Paré Affidavit, Exhibit "1", paragraph 6. There is no prohibition in the Charter Party from the Vessel carrying the grain cargo in question to Iraq. Despite this, Plaintiff has claimed that this was prohibited on 2 entirely different grounds, and asserts that Defendant was in breach of the charter and that the Defendant repudiated the charter. Defendant, in turn, asserts that its orders for the Vessel to load

a grain cargo for Iraq were legitimate and Plaintiff's refusal to proceed to Iraq amounted to a repudiation of the Charter Party giving rise to Defendant's damages as outlined herein.

**Plaintiff's Exaggerated Damages**

Plaintiff has claimed damages in the total amount of $6,097,148.10. For reasons outlined herein, these are greatly exaggerated. For example, Plaintiff's Complaint asserts that "Glory *will* have to re-charter the Vessel to a subsequent charterer at the current market rate of hire payments amounting to $45,000 per day, compared to the Charter Party hire payment rate of $82,000 per day, resulting in a loss of $37,000 in hire payment(s) per day. (Complaint, Exhibit "4" to Paré Affidavit at ¶ 13). As charter party fixture reports show, however, the market rate for this Vessel was not, as of February 1, 2008, $45,000 per day, but, instead, at a minimum some $65,000 per day when taking into account a "ballast bonus" for the Vessel being in the U.S. Gulf, a location where grain vessels have higher value as this is a prime grain loading location (see Exhibit "2" and its attachment to Paré Affidavit). Furthermore, Plaintiff has wholly failed to take into account, in its damage calculations, that Defendant has paid Plaintiff the sum of $1,840,900.94, as further explained herein.

**Defendant's Counterclaim**

Because of Plaintiff's wrongful refusal to perform the voyage, Defendant has suffered the following damages:

1) $1,840,900.94 paid to Plaintiff in advance for hire and bunkers against which Defendant received no Vessel services.

2) $270,000 in lost profits based on Defendant losing its $3,000 profit per day under the Subcharter Party for a period of approximately 90 days.

3) $3,439,283.75 in damages claimed by Brave Bulk under the Subcharter Party.

4) $550,000 in "costs" for London arbitration, the same amount as claimed by Plaintiff in ¶ 20(d) of its Complaint.

5) $1,385,972.01 in interest on the principal claim of $5,550,184.69 based on the same rate (7.5% for 3 years at 3 month rests) as claimed by Plaintiff in ¶ 13 of its Complaint.

Total Counterclaim: $7,486,156.70

**Plaintiff's Attachments of Defendant's Property**

So far as is presently known, Plaintiff has attached two electronic fund transfers of Defendant in the amount of $1,069,366.44 and $61,559.73 for a total of $1,130,926.17 (see Exhibit "3" to Paré Affidavit). This is the minimum amount for which Defendant should obtain an order for countersecurity.

## POINT I

## PLAINTIFF SHOULD BE ORDERED TO POST COUNTERSECURITY FORTHWITH TO DEFENDANT ON ACCOUNT OF ITS COUNTERCLAIMS

As outlined above, Defendant has counterclaims in the total amount of $7,486,156.70. Further, Plaintiff has, to date, attached some $1,130,926.17 of Defendant's property. Defendant should therefore be entitled to an order for the prompt posting of countersecurity in, at a minimum, the same amounts as Plaintiff attaches. Supplemental Rule E(7) provides:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given *must* give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.
>
> (emphasis added)

Defendant has given security, as outlined, and Defendant's counterclaim arises out of the same transaction or occurrence that is the subject of Plaintiff's original action. In fact, the case law suggests Defendant should seek countersecurity under Rule E(7) rather than filing a separate

action and seeking to attach the property of Plaintiff. Chiquita Int'l Ltd. v. M.V. BOSSE, 2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. 2007); Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil, 2006 U.S. Dist. LEXIS 60771, 2006 A.M.C. 2120 (S.D.N.Y. 2006). Guided by these cases, Defendant has not sought to commence a separate action and attachment but, instead, seeks countersecurity for its counterclaims in this action. Defendant therefore requests an order for Plaintiff to promptly post cash countersecurity in an amount not less than $1,130,926.17 and that this increase with any further attachments made by Plaintiff. The "core purpose" of the countersecurity rule is to place the parties on an even footing." Finecom Shipping Ltd. v. MultiTrade Enterprises AG, 2005 A.M.C. 2952 (S.D.N.Y. 2005). When a plaintiff fails to provide countersecurity, dismissal of the complaint may be ordered. Yacht Basin, Inc. v. M/V GRAY MIST II, 1990 A.M.C. 2674 (S.D. Fla. 1989).

It is respectfully submitted that Plaintiff be ordered to immediately post cash security to Defendant in an amount no less than $1,130,962.17 with said amount automatically increasing with any attachments by Plaintiff against Defendant in excess of that amount and that, if Plaintiff fails to post said countersecurity within 7 days of any order, that Plaintiff's attachments against Defendant's property be vacated and its suit dismissed.

## POINT II

## PLAINTIFF'S CLAIMS AGAINST DEFENDANT ARE GREATLY EXAGGERATED AND SHOULD BE VACATED OR REDUCED AND/OR PLAINTIFF SHOULD BE ORDERED TO PROVIDE DISCOVERY RESPECTING ITS FIXING OF THE VESSEL

Supplemental Rule E(6) provides:

> Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing.

Plaintiff's claims, which are in the principal amount of $4,528,316.15 (see paragraphs 12 and 14 of the Complaint, Paré Affidavit Exhibit "4") exclusive of $1,018,832 in interest and $550,000 in "costs", are greatly exaggerated for the various reasons mentioned below.

**Plaintiff Has Failed to Account for Defendant's Payments of $1,840,900.94 and Bunkers Supplied**

As outlined, Defendant has prepaid charter hire for 15 days in January and bunkers in the amount of $1,840,900.94 (see Exhibit "1"(A) and (B) to Paré Affidavit) for which Defendant has received no benefit. At a minimum, Plaintiff has failed to account for this amount. Instead, it asserts claims which, in effect, include the period from January 11-January 31, 2008.

In addition, Brave Bulk refueled the Vessel by adding a further 300 tons of intermediate fuel oil having a value of about $500 per ton for a further advance of about $150,000 to Plaintiff for which it has not accounted (see Exhibit "1" to Paré Affidavit at ¶ 8).

**Plaintiff's Claims "Double Dip" for January**

As indicated, Plaintiff totally ignores Plaintiff's payment of $1,840,900.94 which includes payment of hire for 15 days in January from January 11 to January 26 at 10:33 hours. Plaintiff then claims additional days from January 26 to February 1 in the amount of $468,316.15 (paragraph 10). This $468,316.15, when divided by $82,000 per day, amounts to a further 5.71 days.

Plaintiff elsewhere, however, in paragraph 14 of its Complaint, seeks market damages covering 114 days. The Vessel was delivered on January 11, 2008. Defendant had the option to redeliver the Vessel on May 7 (see Paré Affidavit at Exhibit "1"(C), p. 2: "TC PERIOD UPTO MIN/MAX 7TH MAY – 6TH JUNE 2007 [SIC] TC IN CHTRS [DEFENDANT'S] OPTN"). That is a period of some 116 ½ days. When one sets aide the above mentioned 5.71 days (which also

counts February 1), for which Plaintiff separately claims in paragraph 10 of the Complaint, one finds Plaintiff's claims must include the following period:

15 days in January
29 days in February
31 days in March
30 days in April
7 days in May
112 days

This shows two things. First, Plaintiff has already sought compensation which includes the 15 days in January but gives Defendant *no credit for its $1,840,940.94 payment* for January. Second, Plaintiff seeks *full* damages of $82,000 per day for the above mentioned 5.71 days in January whereas its damages should be restricted to the *difference* between $82,000 per day and the market value of the Vessel for any relevant period.

**Plaintiff Has Claimed an Artificially Low Market Value and Excessive Daily Damages**

Plaintiff asserts in paragraph 13 of the Complaint (Exhibit "4" to Paré Affidavit) it *will* have to recharter the Vessel to a subsequent charterer and that the current market rate for hire is $45,000 per day, compared to the Charter Party payment rate of $82,000 per day, which Plaintiff claims results in a loss of $37,000 in hire payment(s) per day. This is a gross exaggeration. As shown in Exhibit "2" and its attachment to the Paré Affidavit, the market rate for a *smaller and older* vessel as of the date of Plaintiff's Complaint (February 1) was $58,000 per day, not including a reported $800,000 ballast bonus. Such a ballast bonus for a 4 month/120 day voyage would add a further $6,666 to the market value of the Vessel per day. Hence, the minimum market value for a smaller and older vessel was $64,666 per day. Assuming a value for the Vessel of $65,000 per day, Plaintiff's alleged "loss" should amount to no more than $17,000 per day ($82,000 less $65,000). By contrast, Plaintiff claims, based on an alleged amount for which it "will" charter the Vessel, that its loss is $37,000 per day (¶ 13 of its Complaint).

**Plaintiff's Damages, When Properly Calculated**

Since the Vessel was "delivered" on January 11 at 10:33 (although no effective service of the Vessel was provided) and since Defendant had the option to redeliver the Vessel as of May 7 at 0000 hours, the maximum number of days for any damage period should be 117 days[1], calculated as follows:

20 days in January (January 11-January 31)
29 days in February
31 days in March
30 days in April
7 days in May
117 days

Assuming a difference between the Charter Party rate of $82,000 per day and a market rate of $65,000 per day, Plaintiff's damages are no greater than $1,989,000 calculated as follows:

**$17,000 x 117 = $1,989,000**

As noted, however, Defendant **prepaid $1,840,900.94.** Credit must be given for this. Hence, Plaintiff's damages for which it is not yet already secured by prepayments are no more than $148,099.06[2] based on the following:

| | |
|---|---|
| $1,989,000.00 | Maximum Damages for Period |
| -1,840,900.94 | Paid to Defendant |
| $ 148,099.06 | Maximum Damages Not Secured |

Clearly, Plaintiff cannot be entitled to interest of $1,018,832 (see ¶ 20C of the Complaint, Exhibit "4" to Paré Affidavit) respecting any claim of $148,099.06 nor can it be entitled to "costs" of $550,000 on such a claim (¶ 20 of the Complaint). In view of the "equities" of Plaintiff having exaggerated its claim and having attached $1,130,929.17 of Defendant's property and having the benefit of a further $150,000 in security by virtue of bunkers supplied by

[1] In fact, it should be under 117 days given the Vessel was delivered during the day on January 11 and that day should not count in full nor should May 7, as Defendant had the option of redelivering the Vessel as of 0000 hours on May 7.

[2] This does not include the fact that Glory also has the benefit of a further $150,000 in bunkers supplied by Brave Bulk.

Brave Bulk (see Paré Affidavit, Exhibit "1", paragraph 8), it is respectfully submitted that Plaintiff's claim and attachment should be vacated altogether or reduced to no more than $148,099.07. In effect, the $150,000 in prepaid bunkers of which Plaintiff has had the use represents a form of security for Plaintiff's claim acquired by self-help. Where a portion of a claim is secured elsewhere, it cannot also be the subject of security by a Rule B maritime attachment. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445, n. 5 (2d Cir. 2006).(". . . a district court may vacate the attachment if the defendant shows . . . the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.").

**Discovery of Plaintiff's Alleged Damages**

In the alternative, if the Court is not prepared to vacate or reduce the amount of Plaintiff's attachments based on the above, it is respectfully submitted that Defendant have discovery for the limited purpose of determining the amounts for which Plaintiff *actually* fixed the Vessel. It is respectfully submitted that this is warranted since Plaintiff's attachments are based entirely on what it *alleged* it *would* obtain in the market and, by now, Plaintiff surely must have *actually* fixed the Vessel. Defendant's discovery request is attached as Exhibit "7" to Paré Affidavit. It is respectfully submitted that Plaintiff be ordered to respond to these limited requests by March 8, 2008.

## POINT III

## BECAUSE DEFENDANTS HAVE FILED A GENERAL APPEARANCE AND ANSWER, PLAINTIFF SHOULD BE BARRED FROM SERVING FUTURE ATTACHMENTS

Plaintiff should not be allowed to serve *future* attachments since Defendant has now, as of February 28, 2008, filed a General Appearance and Answer (see Exhibit "5" to Paré Affidavit) to the Plaintiff's Complaint.

The reason that future attachments should be barred is that Defendant has now filed a general appearance not contesting the in personam jurisdiction of this Honorable Court. By appearing generally, that exposes Defendant to the full amount of liability that might be imposed by the Court. The alternative, of course, would have been for Defendant to file a "restricted appearance" under Supplemental Rule E(8) which would have limited the Court's jurisdiction to the amount of any attached funds.

The law on the effect of a general appearance and its significance has strong roots. It was clearly stated in Western Bulk Carriers (Australia), Pty. V. P.S. International, Ltd., 762 F. Supp. 1302 (S.D. Ohio 1991):

> In the alternative, defendant moves the Court for an order preventing any further attachments under the terms of the attachment order. Defendant seeks to prevent plaintiff from attaching any additional funds which may be placed in defendant's BancOhio account in the future. Plaintiff has not specifically addressed this alternative request for relief. Although the Court is satisfied with the validity of the attachments which have already occurred, the Court does not believe that the same is necessarily true of any future attachments of defendant's funds which plaintiff might contemplate. Plaintiff's right to attach any additional funds of defendant in the future, as with its right to the initial attachment of the funds then contained in defendant's account at BancOhio, necessarily depends upon a showing that defendant cannot be found within the district. *Defendant has now consented to the jurisdiction of this Court and has waived any challenge it may have with respect to personal jurisdiction.* Additionally, defendant has authorized Mr. Hudson to serve as its agent in this district for receipt of service of process. Accordingly, at this point plaintiff can be found within this district, and therefore there is no basis for future attachment of defendant's property.
>
> (emphasis added)
> 762 F. Supp. at 1309-10

Other cases, including many from this Court, are to identical effect. In the Matter of Diakan Love, S.A. and Al-Haddad Bros. Enterprises, Inc., 584 F. Supp. 782, 786 (S.D.N.Y. 1984)("Since Al-Haddad had appeared in the action prior to the time when it drew on the letter at

Morgan, I need not consider whether upon that later occurrence the attachment could become effective against the sums which had been payable . . ."); Chumet Shipping Co., Inc. v. S.S. Pitrea Sea, 1978 A.M.C. 2579, 2580 (S.D.NY. 1978)("The maritime attachment should have been vacated for another reason: Med-Africa has made a pre-attachment appearance, thus, voluntarily subjecting itself to this Court's jurisdiction."); Maryland Shipbuilding & Drydock Co., 201 F. Supp. 858, 860 (S.D.N.Y. 1962)("Since the respondent's attorneys had filed a general appearance in the first action the respondent was 'present' in the district up to the time when the prior action was discontinued and no further attachment could be made."); Cocotos S.S. of Panama, Societa Anonima v. Sociedad Maritime Victoria, 1957 A.M.C. 397, 399 (S.D.N.Y. 1956)("Inasmuch as Strathos appeared in the suit on July 23, 1956, the process with claim of foreign attachment [as maritime attachment and garnishment was then known] dated July 23, 1956 and executed on July 24, 1956 (denominated B above) insofar as it attaches property of Strathos is quashed."); J.D. & A.B. Spreckely Co. v. The Takoka Maru, 44 F. Supp. 939, 940 (S.D.N.Y. 1942)("Libelant's motion (2) for a Writ of Foreign Attachment is denied. By personal appearance and the interposition of an answer the respondent is subject to the jurisdiction of this court."); Nehring v. Steam M/V Point Vail, 901 F.2d 1044, 1052 ("After Point Vail Company entered a general appearance, maritime attachment -- which exists primarily to secure such appearance -- could no longer properly issue . . ."); Fernandes v. United Fruit Co., 303 F. Supp. 681, 683 (D.C. Md. 1969)("nothing will defeat an attachment except (1) an actual appearance by the respondent before the marshal levies on the property or (2) actual service of the respondent.").

In an unreported case of Pioneer Trading (Asia Pacific) Ltd. v. Seyang Shipping Co., Ltd., 04 Civ. 5655 (DAB). Judge Batts ruled, after full argument on the issue, that the filing of a

general appearance and answer barred future attachments. A copy of relevant pages of the transcript of that decision is attached as Exhibit "6" to Paré Affidavit. The Court's ruling appears at the beginning of page 53-54. The Court said:

> **THE COURT:** Well, let me do better than that. It seems to me that Mr. Pare has a weighty argument in terms of the impact of a general appearance on these orders of attachment, and it would be difficult for me to say that it makes sense to continue beyond the appearance the force and effect of attachment based on the case law and the understanding of the function of it.
>
> Yes, it does have a dual purpose under Rule B of security as well as appearance, but I cannot see in the materials submitted and the case discussed a statement that the security interest continues once the appearance has been made and, therefore, a continuing order of attachment is appropriate.
>
> So, under those circumstances, I am ruling in favor of the defendant, and my ruling would be to nunc pro tunc that part of the order signed on July 21st, to eliminate that phrase that talks about supplemental process enforcing the Court's order may be issued without further order of the Court. That part is stricken and, therefore, the order of attachment is valid up to the point of the time of a general appearance, since the general appearance was made.

(see Paré Affidavit Exhibit "5" at p. 53-4).

Hence, no fewer than nine (9) cases (not including a tenth case from this Court mentioned below), which include six (6) from this Court (not including the seventh mentioned below), clearly state the effect of a general appearance is to bar future maritime attachments. In the circumstances, Plaintiff should be barred from effecting further attachments.

There are two cases of this court that should be discussed, both seemingly reaching the opposite conclusion, i.e. that a general appearance should not bar future attachments. On a close reading, these cases cannot support this result given the weight of authority to the opposite effect.

The first is Parkroad Corp. v. China Worldwide Shipping Co. Ltd., 2005 U.S. Dist. LEXIS 11122 (S.D.N.Y.) decided by Judge Daniels on June 6, 2005. In his opinion, Judge Daniels reasoned on the basis of a very general proposition that jurisdictional presence "is to be determined as of the date the complaint is filed." Id. at 2. He then reasoned, solely on this premise, that all future attachments should therefore be valid because they too should be measured by this time. With due respect to Judge Daniels, this fails to take into account the significance of a general appearance and the prior law on this subject cited above, *none* of which cases were cited or treated by Judge Daniels. The only specific legal support cited by Judge Daniels in Parkroad is HBC Hamburg Bulk Carriers GmbH & Co. k.g. v. Proteinas y Oleicos S.A. de C.V., 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y.).

In HBC Hamburg, decided on May 3, 2005, there is, once again, no analysis of the prior law in this and other districts, as we have outlined above. Instead, except for reference to some general proposition concerning attachment, Judge Buchwald relied on only two cases. The first case is Construction Express Enterprises v. Nikki Maritime, Ltd., 558 F. Supp. 1372 (S.D.N.Y. 1983). That case is flatly distinguishable. In Nikki the plaintiff had originally sought an attachment under Article 6201 of the New York Civil Procedure Laws and Rules. The request for this was denied but the court stayed enforcement of its order pending appeal. The Court of Appeals "suggested" that a maritime attachment would have been a possibility when the action was filed and on that basis remanded the case for the "district court to consider whether appellant is entitled to a "traditional" maritime admiralty attachment." 558 F. Supp. at 1374. The district court then, pursuant to the Court of Appeal's mandate, considered the availability of a maritime attachment *as of the date of the original filing of the complaint* (and not as of the later point in time when a general appearance was filed) and concluded the defendant was not then found

within the district (in fact, the defendant *denied* it was present but later changed its mind). That case is a clearly distinguishable situation and should not stand for the stand for the proposition, on its facts, that future attachments are not barred by the filing of a general appearance.

The second case relied on by Judge Buchwald in HCB Hamburg is Ythan Ltd. v. Ams. Bulk Transp. Ltd., 336 F. Supp.2d 305 (S.D.N.Y. 2004). That case held that when funds were attached on August 24 and an appearance was later filed on August 26, the later appearance on August 26 did not vitiate the earlier attachments. "The subsequent appearance had no effect in eviscerating the already effective attachment," 336 F. Supp.2d at 308. No one would dispute that proposition but the case does *not* address the effect of a general appearance on *future* attachments. It therefore provides no support that attachments may continue after the filing of a general appearance.

It is respectfully submitted that these two recent cases were erroneously decided and rely, in one instance, on a distinguishable case and, in the other, a misunderstanding of the facts of a case relied on. The weight of authority in this and other courts is that the filing of a general appearance bars *future* maritime attachments.

Finally, *after* the foregoing cases were decided, a further decision of this Court ruled that the filing of a general appearance barred future attachments. In Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil, 2006 U.S. Dist. LEXIS 60771, Judge Kennan said: "Once Allround answered, thereby consenting to the Court's jurisdiction, there could be no ex parte attachments because 'security cannot be obtained except as Plaintiff an adjunct to obtaining jurisdiction.'"

Hence, further attachment by Plaintiff should be barred following Defendant's filing of a General Appearance and Answer on February 28, 2008.

**Conclusion**

Defendant respectfully prays, in the alternative, that:

1. Plaintiff be ordered to forthwith post cash security to Defendant on its counterclaims in an amount of no less than $1,130,926.17 with that amount automatically increasing dollar for dollar with any further attachments in excess of this amount by Plaintiff and, if Plaintiff fails to post said countersecurity within 7 days of any order, that Plaintiff's attachments against Defendant be vacated and its suit dismissed;

2. Plaintiff's order of attachment be vacated or reduced as prayed herein or that Defendant have discovery respecting Plaintiff's refixing of the Vessel on an abbreviated schedule;

3. that as of February 28, 2008 Plaintiff be barred from effecting any further attachments against Defendant; and

4. that Defendant be awarded any further and different relief as may be just and equitable.

Dated: New York, New York
February 28, 2008

NOURSE & BOWLES, LLP
Attorneys for Defendant
FIVE OCEAN CORPORATION LTD.

By:______________________________
Armand M. Paré, Jr.(AP-8575)
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6201